**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| LORI DAVIS, Individually and For Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No. 23-CV-162 |
| TOTALMED, INC. and MEDICAL STAFFING SOLUTIONS, LLC | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR APPROVAL OF AN FLSA SETTLEMENT**

59549237;1

**Table of Contents**

1.      INTRODUCTION. ........................................................................................ 1

2.      FACTUAL AND PROCEDURAL BACKGROUND. ........................................ 2

     A.     Nature of the Claims. ............................................................................. 2

3.      SUMMARY OF THE SETTLEMENT TERMS. ........................................... 3

     A.     Monetary Awards and Release of Claims. ............................................ 3

     B.     Settlement Administration and Distribution. ........................................ 4

4.      THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE. ............................................................................... 4

     A.     The Proposed Settlement is the Product of Contested Litigation. .......... 5

     B.     The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties. .................................................... 6

         1.     A *Bona Fide* Dispute Between the Parties Existed Over Liability. ................................................................................ 7

         2.     The Proposed Settlement is Fair and Reasonable. ......................... 8

5.      THE REQUESTED SERVICE AWARD SHOULD BE APPROVED. ...... 10

6.      CLASS COUNSEL'S ATTORNEY FEES AND LITIGATION EXPENSES SHOULD BE APPROVED. ................................................................. 12

     A.     Analysis of the Market for Legal Services Supports Davis' Request.... 15

     B.     The Risk of Nonpayment Supports the Requested Attorneys' Fee Award. .................................................................................... 17

     C.     The Results and the Benefits Conferred Upon the Settlement Class Members Justify the Requested Award. ...................................................... 17

     D.     Davis' Litigation Costs. ...................................................................... 19

7.      CONCLUSION. .................................................................................... 19

# Table of Authorities

Page(s)

Cases

*Bainter v. Akram Investments, LLC,*
   No. 17 C 7064, 2018 WL 4943884 (N.D. Ill. Oct. 9, 2018) ........................................ 5, 8
*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) .................................................................................................... 12
*Brewer v. Molina Healthcare, Inc.,*
   No. 1:16-CV-09523, 2018 WL 2966956 (N.D. Ill. June 12, 2018) .................. 10, 11, 18
*Briggs v. PNC Fin. Servs. Grp., Inc.,*
   No. 1:15-CV-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .................. 13, 16, 18
*Brooklyn Savings Bank v. O'Neil,*
   324 U.S. 697 (1945) ....................................................................................................... 5
*Butler v. Am. Cable & Tel., LLC,* No. 09 Civ.,
   5336, 2011 WL 4729789 n.9 (N.D. Ill. Oct. 6, 2011) ..................................................... 5
*Campbell v. Advantage Sales & Marketing LLC,*
   No. 1:09-cv-1430, 2012 WL 1424417 (S.D. Ind. April 24, 2012) ................................ 13
*Cannon v. Time Warner NY Cable LLC,*
   No. 13-cv-02521, 2015 WL 4498808 (D. Colo. July 24, 2015) ...................................... 8
*Castillo v. Noodles & Co.,*
   No. 16-cv-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ........................ 11, 13, 16
*Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694,
   2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................................................................ 17
*Espenscheid v. Direct Sat USA, LLC,*
   688 F.3d 872 (7th Cir. 2012) ....................................................................................... 11
*Florin v. Nationsbank of Ga., N.A.,*
   34 F.3d 560 (7th Cir. 1994) .............................................................................. 12, 13, 14
*Furman v. At Home Stores LLC,*
   No. 1:16-CV-08190, 2017 WL 1730995 (N.D. Ill. May 1, 2017) ................................... 6
*Gaskill v. Gordon,*
   160 F.3d 361 (7th Cir. 1998) ....................................................................................... 16
*Gaskill v. Gordon,*
   942 F. Supp. 382 (N.D. Ill. 1996) .......................................................................... 13, 14
*Goldberger v. Integrated Res., Inc.,*
   209 F.3d 43 (2d Cir. 2000) ........................................................................................... 14
*Hart v. RCI Hosp. Holdings, Inc.,*
   No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ...................... 11
*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ..................................................................................................... 14
*In re Amino Acid Lysine Antitrust Litig.,*
   No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) .................................... 13
*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,*
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) ........................................................................ 14

Case 1:23-cv-00162-WCG   Filed 01/17/24   Page 3 of 26   Document 22

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001) ............................................................ 13
*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...................................................... 16, 17
*In re Dairy Farmers*,
    80 F. Supp. 3d 838 (N.D. Ill. Feb. 20, 2015) .................................. 16
*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ......................................................... 9
*In re Newbridge Networks Sec. Litig.*,
    1998 WL 765724 (D.D.C. Oct. 23, 1998) ......................................... 9
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F. 3d 283 (3d Cir. 1998) ........................................................... 15
*In re Ravisent Techs., Inc. Sec. Litig.*,
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...................................... 9
*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) .......................................................... 15
*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) .......................................................... 13
*Isby v. Bayh*,
    75 F. 3d 1191 (7th Cir. 1996) ......................................................... 10
*Kaplan v. Houlihan Smith & Co.*,
    No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ........... 12
*Kirchoff v. Flynn*,
    786 F. 2d 320 (7th Cir. 1986) ......................................................... 15
*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
    No. 16 CIV. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ...... 6, 11, 13
*Lazy Oil Co. v. Witco*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ............................................... 9
*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ................................................... 4, 5
*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir.1987) ............................................................. 9
*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C*,
    No. 08 civ 7670, 2010 WL 532960 (S.D.N.Y. Feb 9, 2010) ............. 12
*Primax Recoveries, Inc. v. Sevilla*,
    324 F.3d 544 (7th Cir. 2003) ......................................................... 12
*Ramah Navajo Chapter v. Babbitt*,
    50 F. Supp. 2d 1091 (D.N.M. 1999) .............................................. 18
*Retsky Family Ltd. P'ship*,
    No. 97 C 7694, 2001 WL 1568856 .................................................. 16
*Reyes v. Buddha-Bar NYC*,
    No. 08 Civ. 2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............. 12
*Roberts v. Apple Sauce, Inc.*,
    No. 3:12-cv-830, 2014 WL 4804252 (N.D. Ind. September 25, 2014) ........... 5

iv

*Rotuna v. W. Customer Mgmt. Grp., LLC,*
   4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ....................................... 17

*Sanchez v. Roka Akor Chicago LLC,*
   No. 14-CV-4645, 2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) .................................... 16

*Skelton v. G.M. Corp.,*
   860 F.2d 250 (7th Cir. 1988) ............................................................................. 12, 13

*Soto v. Wings 'R Us Romeoville, Inc.,*
   No. 15 C 10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) ...................................... 8

*Sutton v. Bernard,*
   504 F.3d 688 (7th Cir. 2007) ......................................................................... 12, 15, 17

*Swartz v. D-J Eng'g, Inc.,*
   2016 WL 633872 (D. Kan. Feb. 17, 2016)............................................................... 7

*Taubenfeld v. Aon Corp.,*
   415 F.3d 597 (7th Cir. 2005) ......................................................................... 15, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ............................................................................... 13

*Wong v. Accretive Health, Inc.,*
   773 F.3d 859 (7th Cir. 2014) ......................................................................... 9, 13

*Woods v. Club Cabaret, Inc.,*
   No. 1:15-CV-01213-JEH, 2017 WL 4054523 (C.D. Ill. May 17, 2017) ...................... 6

## Statutes

29 U.S.C. § 216(b) .......................................................................................... 12
29 U.S.C. 201 .................................................................................................. 2

## Other Authorities

4 Newberg on Class Actions § 11.38, at 11- 80 ........................................................... 11

v

## 1.    INTRODUCTION.

Lori Davis (Davis) on behalf of herself and all other persons similarly situated, and TotalMed and Medical Staffing Solutions, LLC (collectively, "MSS") (all together, the "Parties") have reached a settlement in this lawsuit (the "Action").[1] The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after formally and informally exchanging information over the course of half a year. The terms of the settlement are reasonable, appropriate, and fair to all Parties and individuals involved.

The Parties' Settlement covers Davis and 547 other individuals who worked for MSS, are not a party to an arbitration agreement, and will have the opportunity to opt into this lawsuit (Settlement Class Members). If the Settlement is approved, the Settlement Class Members will receive a Settlement Notice explaining the terms of the Settlement and the consent forms to opt into the Settlement. The Settlement Class Members will have 45 days to opt into the settlement.

As shown below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. Therefore, Davis respectfully requests the Court approve the Settlement and permit the Parties to effectuate its terms using the forms and procedures set forth in their Agreement. *See* Ex. 1. Further, Davis seeks Court approval of the following payments: (i) Service Award to Davis in the amount

---

[1] The Settlement is memorialized in the Settlement Agreement and Release ("Agreement"), which is attached hereto as <u>Exhibit 1</u>.

1

of $5,000.00; (ii) Attorneys' Fees up to 35% of the Settlement; (iii) Davis' Litigation Expenses inclusive of settlement administration in an amount not to exceed $5,000.

2.      **FACTUAL AND PROCEDURAL BACKGROUND.**

     **A. Nature of the Claims.**

On February 8, 2023, Davis filed this Action, on behalf of himself and others similarly situated, alleging MSS violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq*. Doc. 1. Davis alleged MSS failed to pay certain hourly workers overtime as required by federal law. *See id*. Specifically, Davis alleged MSS's policies and procedures, short staffing, and work requirements required Davis and the Settlement Class Members to work off the clock during a mandatory meal period. *Id*. MSS has at all relevant times denied Davis' allegations and has disputed that they violated any law.

The Parties engaged in extensive negotiations relating to the specific terms of the Agreement. The Parties exchanged voluminous data and analyzed the same. Among other things, the Parties discovered that co-defendant TotalMed, Inc. never maintained an automatic meal period deduction similar to the MSS practice being challenged by Davis. As a result, the settlement only applies to individuals (such as Davis) who are or were employed by MSS. The Parties went through rounds of negotiations, and revisions to formulate an agreed upon Settlement Agreement. After months of continued negotiations, the Parties executed the Agreement. If approved by this Court, the Agreement will resolve this matter in its entirety and provide relief to Davis and the Participating Settlement Class Members.

3.    **SUMMARY OF THE SETTLEMENT TERMS.**

   **A. Monetary Awards and Release of Claims.**

   The proposed settlement obligates MSS to pay a maximum settlement amount of $175,000.00 to settle the claims in this Action ("Gross Settlement Amount"). The Gross Settlement Amount covers all wage and hour claims (including related claims for attorneys' fees and costs), and service award for Davis.

   From the Gross Settlement Amount, up to $61,250.00 will be allocated to Class Counsel as attorneys' fees; up to $5,000 will be allocated to Class Counsel for reimbursable litigation expenses and costs inclusive of the settlement administration costs; up to $5,000.00 will be allocated to Davis for her assistance in pursuing this matter. The "Net Settlement Amount" represents the settlement proceeds that remain after these identified deductions are taken from the Gross Settlement Award.

   The Net Settlement Amount will be divided among the Settlement Class Members on a pro rata basis using the actual hours worked over 40 in a workweek and pay rates. Because the Parties have the pay data and workweeks with overtime, the allocations are based on the actual  hours worked by the Settlement Class Members. Accordingly, the back wage estimate for each Settlement Class Member is as accurate.

   In exchange for these monetary awards, and the other consideration detailed in the Parties' Agreement, Participating Settlement Class Members will provide MSS with a release of all wage and hour claims.

**B. Settlement Administration and Distribution.**

If the Settlement is approved, the Settlement Class Members will receive a notice explaining the nature, terms, and scope of the Settlement (Ex. 2, Notice), along with representing the amount of compensation they are due. The Net Settlement Amount will be divided among the Settlement Class Members on a pro rata basis based on each individual Class Member's compensation received and actual hours worked for MSS during the relevant time period. In exchange for these monetary awards and the other consideration detailed in the Parties' Agreement, Participating Settlement Class Members who timely opt-in to the settlement shall release MSS from their respective wage and hour claims against MSS.

The Settlement Payment shall be taxable wages, subject to withholding, and a W-2 Form will be issued to each Participating Settlement Class Member who cashes the Settlement Payment. All Participating Settlement Class Members who submit a consent will receive checks in the mail. Davis is automatically covered by the Settlement.

Only those Participating Settlement Class Members who elect to submit a consent form will be bound by the terms of the Agreement. In contrast, the rights of those Settlement Class Members who do not choose to not submit a consent form will not be impacted. Any settlement funds that are not claimed by the Settlement Class Members will revert back to MSS.

**4.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE.**

Where the litigation arises from a private enforcement action under Section

4

216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011); *Roberts v. Apple Sauce, Inc.*, No. 3:12-cv-830, 2014 WL 4804252, at *1 (N.D. Ind. September 25, 2014). The Court, therefore, should perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*

Based on the contested nature of this litigation and the quality of the Settlement, this Court should conclude that this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation.

### A. The Proposed Settlement is the Product of Contested Litigation.

The Parties' agreed Settlement is a result of contested litigation. The lawsuit has been pending for half a year and was resolved only after the Parties engaged in months of settlement negotiations. The Parties had a full opportunity to analyze the

5

pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. The Settlement was reached after arm's length negotiations and the exchange of voluminous pay data and damage models. The Parties are all represented by counsel experienced in wage-hour and FLSA litigation. This is sufficient to establish a contested litigation. *See*, *e.g.*, *Bainter v. Akram Investments, LLC*, No. 17 C 7064, 2018 WL 4943884, at *1 (N.D. Ill. Oct. 9, 2018) (holding the contested litigation prong was satisfied where the parties "actively litigated the case for one year" and "engaged in discovery and motion practice"); *Furman v. At Home Stores LLC*, No. 1:16-CV-08190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017) (finding litigation was contested where the defendant denied that it violated the FLSA, the parties reviewed comprehensive payroll data in reaching the settlement, and the settlement was the result of arm's-length negotiations); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (finding, among other things, that FLSA settlement resulted from "contested litigation with substantial informal discovery, and arm's-length negotiations").

### B. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

### 1. A *Bona Fide* Dispute Between the Parties Existed Over Liability.

"A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due." *Woods v. Club Cabaret, Inc.*, No. 1:15-CV-01213-JEH, 2017 WL 4054523, at *9 (C.D. Ill. May 17, 2017) (finding a bona fide dispute where the plaintiffs alleged the defendants failed to pay them minimum wages and illegally took their tips in the form of house fees and fines, the defendants deny these allegations, and the parties had opposing views on damages components and whether a three year statute of limitations period applied). Here, Davis alleged MSS violated the FLSA because they required certain individuals to work more than 40 hours a week without paying them overtime as required. In particular, Davis alleged MSS required a 30 minute meal break which was unpaid. MSS denied Davis' allegations, asserted the Settlement Class Members were properly paid for all time worked, were properly classified, were not entitled to overtime, and denied that the Settlement Class Members are entitled to any damages. The Parties also disputed whether collective treatment of Davis' FLSA claims is appropriate and whether Davis was entitled to liquidated damages. If the matter was not resolved by settlement, there was a risk that Davis would not succeed in pursuing collective treatment of the action. Moreover, even if Davis achieved conditional certification, MSS intended to move for decertification of the collective following additional and extensive written and oral discovery, a process that would have been time consuming and expensive for all Parties.

This procedural posture, where MSS denied the material facts and any

violation of the FLSA, vigorously defended their position throughout the litigation, where the Parties conducted informal discovery, and the Parties engaged in significant settlement negotiations, demonstrates a *bona fide* dispute between the Parties. *Swartz v. D-J Eng'g, Inc.*, 2016 WL 633872 (D. Kan. Feb. 17, 2016).

### 2. The Proposed Settlement is Fair and Reasonable.

In determining whether an FLSA settlement is fair and reasonable, courts generally examine four factors, which include whether: (1) the parties fairly and honestly negotiated the settlement; (2) serious questions of law and fact exist which place the ultimate outcome in doubt; (3) the value of immediate settlement outweighs the mere possibility of future relief after protracted litigation; and (4) in the judgment of the parties, the settlement is fair and reasonable. *Bainter*, 2018 WL 4943884, at *1; *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 C 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) (citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521, 2015 WL 4498808 (D. Colo. July 24, 2015). Each of these factors is satisfied.

### (i) The Settlement was Fairly and Honestly Negotiated.

Here, the Settlement was the product of arms' length negotiations among experienced counsel. The settlement was reached after the Parties engaged in informal discovery for Davis and Settlement Class Members' payroll data and after the Parties engaged in settlement discussions for a period of nearly a year.

### (ii) The Ultimate Outcome of the Ligation was Unknown.

As outlined above, the Parties disagree about the merits of Davis' claims, and the viability of MSS's defenses. If the litigation had continued, the Parties would have

faced obstacles and uncertainties, including the outcome of a motion for stage one notice, summary judgment, discovery disputes, a motion for decertification, and potentially a trial on the merits of unknown size and scope. Furthermore, even if Davis ultimately prevailed on the issue of liability, Davis would need to prove the amount of damages suffered. This difficulty is compounded because this is an off the clock case which are fact intensive in nature.

### (iii) The Value of the Settlement is Significant.

Based on the damage model created by Class Counsel, the gross amount of the settlement represents over 100% of the 2-year back wages for the Settlement Class Members. MSS asserted that Davis or any Settlement Class Members often did not work more than 40 hours in a week, denied it had a 30-minute meal auto deduction policy, denied that any straight time (or gap time) was recoverable, or that its pay practice violated any law, and contested whether the matter should be certified as a class or collective action. As such, this recovery is an outstanding result and is more than fair and reasonable. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial).[2]

---

[2] *See also Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### (iv) Davis and her Counsel Support the Settlement.

Class Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Based on Class Counsel's knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective actions, Class Counsel believes the Settlement is fair and reasonable. This factor supports approval of the Settlement. *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("the district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, Davis approved the terms of the Settlement. In light of the foregoing, the Court should approve the Parties' proposed Settlement of this Action.

## 5. THE REQUESTED SERVICE AWARD SHOULD BE APPROVED.

The Parties' agreed settlement contemplates providing a service award to Davis in the amount of $5,000, to acknowledge the time and effort expended in helping to achieve a successful Settlement. This payment, if approved, shall issue

---

eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

along with a Form 1099.

"Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Brewer v. Molina Healthcare, Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *2 (N.D. Ill. June 12, 2018). Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012).

Davis took significant actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to Settlement Class Members. *See Brewer*, No. 1:16-CV-09523, 2018 WL 2966956, at *3. ("In agreeing to file this class action suit in their name and through their increased participation in the case, they undertook the significant risk that, "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees."). Finally, Davis spent time and effort in furthering the litigation, including providing information to her attorneys.

The requested service awards are in line with other service payments recently awarded to named plaintiffs in FLSA actions. *See Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (approving $12,500 service award each to two plaintiffs in FLSA settlement); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *6-8 (N.D. Ill. Dec. 23, 2016) (approving

11

$10,000 service award each for four named plaintiffs in FLSA wage action).[3] The requested service awards represent 2.8% of the Gross Settlement Fund, which is a reasonable percentage. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C,* No. 08 civ 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb 9, 2010) (finding that service awards totaling approximately 11% of total recovery are reasonable); *Reyes v. Buddha-Bar NYC,* No. 08 Civ. 2494, 2009 WL 5841177, at *8, *13 (S.D.N.Y. May 28, 2009) (awards of $7,500 each to three named plaintiffs, representing approximately 3% of the total $710,000 settlement amount, was reasonable). Accordingly, the requested service awards are reasonable, and this Court should approve Davis' request.

## 6. CLASS COUNSEL'S ATTORNEY FEES AND LITIGATION EXPENSES SHOULD BE APPROVED.

The Court should award attorneys' fees as a percentage of the total fund made available to the Settlement Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable

---

[3] *See also Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); see also *Lukas v. Advocate*, No. 1:14-cv-2740 (N.D. Ill. June 29, 2016) ECF No. 150 (approving $15,000 service award to named plaintiff in FLSA wage action); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage action); see also 4 Newberg on Class Actions § 11.38, at 11- 80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *see also Boeing*, 444 U.S. at 478.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the trend in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong*, 773 F.3d at 862; *Campbell v. Advantage Sales & Marketing LLC*, No. 1:09-cv-1430, 2012 WL 1424417, at *2 (S.D. Ind. April 24, 2012) (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015); *Briggs*, 2016 WL 7018566, at *3; *Castillo*, 2016 WL 7451626, at *4.[4]

It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the Settlement releases the Settlement Class Members' statutory claims to fees under the FLSA.[5]

---

[4] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[5] *See, e.g.*, 29 U.S.C. § 216(b).

13

There are several other reasons courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this District routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same

conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Second Circuit explained, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

### A. Analysis of the Market for Legal Services Supports Davis' Request.

In deciding the fee to award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton,* 504 F.3d at 692, 693-94, *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F. 2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for

15

'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff*, 786 F. 2d at 325; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F. 3d 283, 333 (3d Cir. 1998).

Here, Counsel executed a fee arrangement with Davis entitling Counsel to 40% of any recovery. "Thus, the Court knows what private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case because the Named Plaintiffs contracted for Counsel to be compensated with the amount Counsel now seeks." *See Castillo,* 2016 WL 7451626, at *4. Because the Davis and Class Counsel negotiated a fee arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs,* 2016 WL 7018566, at *4. Regardless of the fee agreement with Davis, Class Counsel has agreed to reduce its fee to 35% of the common fund.

The percentage requested here is consistent with the standard contingent fee percentage in the district courts within the Seventh Circuit for comparable employment litigation. *See Sanchez v. Roka Akor Chicago LLC,* No. 14-CV-4645, 2017 WL 1425837, at *6 (N.D. Ill. Apr. 20, 2017)(finding a contingent fee of 39.5% of the common fund is also consistent with the market in the Northern District of Illinois); *see*, *e.g.*, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (the "usual range for contingent fees is between 33 and 50 percent."); *In re Dairy Farmers*,

80 F. Supp. 3d 838, 845 (N.D. Ill. Feb. 20, 2015)(in class actions, "usual range for contingent fees is between 33 and 50 percent"); *Retsky Family Ltd. P'ship*, No. 97 C 7694, 2001 WL 1568856, at * 4 (a "customary contingency fee would range from 33 1/3% to 40% of the amount recovered"); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("the typical contingent fee contract is between 33 and 40 percent …").

### B. The Risk of Nonpayment Supports the Requested Attorneys' Fee Award.

Class Counsel's decision to seek the market rate is also reasonable considering the significant risks of nonpayment Counsel faced. At the outset of the litigation, Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent plaintiffs. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Counsel took this case on a contingent fee basis and assumed the risk they would receive *no* fee for their services. *See Sutton*, 504 F.3d at 693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Class Counsel faced significant risk in establishing collective treatment was appropriate and in proving collective liability and the amount of back wages. As the Seventh Circuit has noted, counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). These facts support Class Counsel's fee request.

### C. The Results and the Benefits Conferred Upon the Settlement Class Members Justify the Requested Award.

The benefit that Davis and Settlement Class Members will receive are

significant. Under the settlement, the gross settlement represents over 100% of the two year lookback wages. This is an exceptional result by any measure inasmuch as MSS disputes that any of its policies and practices violated the FLSA. *See*, *Rotuna v. W. Customer Mgmt. Grp., LLC,* 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (awarding one-third of common fund and describing recovery of 75% to 25% of claimed wages as "exceptional."); *Dillworth v. Case Farms Processing, Inc.,* 5:08-CV-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (awarding one-third of common fund as fee in wage case and describing recovery of one-third of claimed wages as "exceptional.").

Further, outside of Davis, the Settlement Class Members will not be required to provide a general release to participate in the Settlement. Settlement Class Members who will provide MSS with a release of their wage and hour law claims. The absence of a general release exemplifies the results achieved for the Settlement Class Members. *See Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Thus, based upon the negotiated fee agreement in this case, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, and the excellent result achieved for Settlement Class Members, Class Counsel is entitled to a reasonable attorneys' fees award of 35% of the Gross Settlement Fund.

**D. Davis' Litigation Costs.**

Class Counsel also seeks to recover up to $5,000 in costs incurred in pursuit of this litigation, including filing, postage, research costs, and costs incurred in administering the settlement. This amount is proportional to similar awards for this Circuit. *See Brewer*, 2018 WL 2966956, at *4 (in FLSA settlement of $3,375,520.89, request for reimbursement of up to $10,000 in actual out-of-pocket expenses incurred in prosecuting this case, including costs for filing and service fees, and postage was found reasonable); *Briggs*, 2016 WL 7018566, at *5 (approving $35,819.29 in costs on a six million-dollar FLSA settlement, for actual out-of-pocket expenses including travel, electronic research, court fees, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees).

**7. CONCLUSION.**

The Parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute between the Parties. The Parties engaged in lengthy negotiations and analysis of pertinent information and, ultimately, resolved the issues between them. The Settlement is eminently fair, reasonable and adequate, and provides Settlement Class Members with significant monetary relief in a contested matter. For these reasons, the Court should approve the Parties' Agreement.

Respectfully submitted,

Dated: January 17, 2024

By:     */s/ Richard M. Schreiber*
        One of Plaintiff's Attorneys

19

Larry A. Johnson Wisconsin Bar No. 1056619
Connor J. Clegg Wisconsin Bar No. 1118534
Attorneys for Plaintiff
Hawks Quindel, S.C.
5150 North Port Washington Road, Suite 243
Milwaukee, WI 53217
Telephone: (414) 271-8650
Fax: (414) 207-6079
E-mail: ljohnson@hq-law.com
cclegg@hq-law.com

Michael A. Josephson Texas State Bar No. 24014780
Richard M. Schreiber Texas State Bar No. 24056278
Attorneys for Plaintiff
Josephson Dunlap, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Fax: (713) 352-3300
Email: mjosephson@mybackwages.com
rschreiber@mybackwages.com

Richard J. (Rex) Burch Texas State Bar No. 24001807
Attorney for Plaintiff
Bruckner Burch, P.L.L.C.
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone: 713-877-8788
Fax: 713-877-8065

***Attorneys for Plaintiff and Others Similarly Situated***

## CERTIFICATE OF SERVICE

I served this document by ECF electronic filing on all known parties in accordance with the Federal Rules of Civil Procedure.

/s/ *Richard M. Schreiber*
Richard M. Schreiber

## CERTIFICATE OF CONFERENCE

I conferred with counsel for Defendant who are unopposed to the relief sought in this Motion.

/s/ *Richard M. Schreiber*
Richard M. Schreiber